**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THOMAS P. ATHRIDGE,<br>Individually and as<br>Father and Next Friend of<br>THOMAS P. ATHRIDGE, Minor,<br><br>**Plaintiffs,**<br><br>v.<br><br>FRANCISCO RIVAS,<br>CHURRERIA MADRID RESTAURANT,<br>CHURRERIA MADRID RESTAURANT,<br>INC.,<br><br>**Defendants.** | **Civil Action No. 89-1222 (JMF)** |
| THOMAS P. ATHRIDGE, SR.,<br>THOMAS P. ATHRIDGE, JR.,<br>MARY T. ATHRIDGE,<br><br>**Plaintiffs,**<br><br>v.<br><br>HILDA RIVAS,<br><br>**Defendant.** | **Civil Action No. 92-1868 (JMF)** |

**MEMORANDUM OPINION**

These consolidated cases were referred to me, upon consent of the parties, for all purposes including trial. Currently pending for resolution is <u>Defendants' Motion for New Trial and/or Judgment Notwithstanding the Verdict</u>. For the reasons stated herein, defendants' motion will be denied.

I.    BACKGROUND

This case has a long, complicated history. In July 1987, Jorge Iglesias ("Iglesias") drove a car belonging to his aunt and uncle ("the Rivases"), while they were in South America, and he collided with a young man named Thomas Athridge. Thomas Athridge and his parents ("plaintiffs" or "the Athridges") filed several lawsuits, naming as defendants Iglesias, the Rivases, the restaurant owned by the Rivases, and two insurance companies.

In July 1995, Judge Thomas Penfield Jackson granted summary judgment in favor of all defendants except Iglesias. The remaining claim, Thomas Athridge's negligence action against Iglesias, was then transferred to Judge Harold Greene. After a bench trial in 1996, Judge Greene issued an opinion finding that Iglesias was negligent, that his negligence proximately caused the injuries Thomas Athridge suffered, and that Iglesias had the last clear chance to avoid the accident but failed to take it. Judge Greene awarded $5,510,010.78 to the Athridges, and the judgment was summarily affirmed on appeal. Athridge v. Iglesias, 950 F. Supp. 1187 (D.D.C. 1996), aff'd without opinion, 1997 WL 404854 (D.C. Cir. June 30, 1997). After entry of the judgment against him, Iglesias declared bankruptcy. Aetna Insurance Company ("Aetna"), Iglesias' insurer, denied coverage, pending further proceedings in plaintiffs' lawsuit against Aetna. Accordingly, plaintiffs' judgment against Iglesias has remained completely unsatisfied.

In the meantime, Thomas Athridge appealed Judge Jackson's July 19, 1995 grant of summary judgment against all defendants except Iglesias. The court of appeals affirmed the award of summary judgment as to all defendants, except the Rivases and their restaurant. Upon remand, the parties conducted additional discovery and filed cross-motions for summary judgment.

In December 1999, the cases brought by the Athridges against the Rivases were referred to me for all purposes including trial. In October 2001, I concluded that there was no genuine issue of material fact as to Iglesias having the Rivases' consent to drive their car and granted summary judgment in the Rivases' favor. The court of appeals, however, reversed that determination and remanded the case for a jury trial. Athridge v. Rivas, 312 F.3d 474 (D.C. Cir. 2002). A trial was held in January 2005, and the following two issues were presented to the jury: (1) whether the defendants established by a preponderance of the evidence that they did not consent to Iglesias' use of their car; and (2) whether the plaintiffs established by a preponderance of the evidence that the defendants were negligent in permitting Iglesias access to the keys to their car and, if so, whether their negligence proximately caused the accident. On January 12, 2005, the jury returned a verdict in favor of plaintiffs and against the Rivases on both counts.

The parties had previously stipulated that, if the Rivases were found by the jury to have consented to Iglesias' use of their car, then they would be bound by the $5.5 million judgment against Iglesias. A dispute arose, however, over whether plaintiffs were entitled to interest dating back to Judge Greene's 1996 judgment. After briefing from the parties, on August 12, 2005, I issued an order denying plaintiffs' request for interest dating back to 1996. Final Judgment was entered on August 15, 2005.

On August 24, 2005, the Rivases filed the present motion for a new trial under Rule 59 and for judgment notwithstanding the verdict under Rule 50[1] on five grounds: (1) I wrongfully

---

[1] Motions for judgment notwithstanding the verdict are now called renewed motions for judgment as a matter of law. For the remainder of this opinion, I will refer to defendants' motion as a renewed motion for judgment as a matter of law.

denied defendants' motion for a directed verdict[2]; (2) the jury's verdict was contrary to the evidence; (3) the jury instruction on "consent" was erroneous and incomplete; (4) the admission of Exhibit 11 was erroneous and unfairly prejudicial; and (5) the admission of Exhibit 14 was erroneous and unfairly prejudicial. <u>Memorandum of Points & Authorities</u> ("Defs. Br.") at 19. Although the Rivases do not specify on which grounds they seek judgment as a matter of law and on which grounds they seek a new trial, I will assume that defendants' renewed motion for judgment as a matter of law is based on my denial of their motion for judgment as a matter of law and that their motion for a new trial is based on the remaining four grounds.

## II. DISCUSSION

### A.  Defendants' Motion Was Timely

As a threshold matter, plaintiffs argue that defendants' motion should be dismissed as untimely. <u>Memorandum of Points and Authorities in Support of Plaintiffs' Opposition to Defendants' Motion for New Trial and/or Judgment Notwithstanding the Verdict</u> ("Pls. Br.") at 4-6. Under Rules 50 and 59 of the Federal Rules of Civil Procedure, a party has ten days from the entry of judgment to file a renewed motion for judgment as a matter of law or a motion for a new trial. Fed. R. Civ. P. 50(b), 59(b). In this case, final judgment was entered on August 15, 2005 and, as a result, defendants had until August 25, 2005 to file their motion. Plaintiffs argue that the actual date from which the time for filing began to run was June 13, 2005, not August 15, 2005, and, therefore, defendants' motion, which was filed on August 24, 2005, was untimely. Pls. Br. at 4-6.

---

[2] Motions for a directed verdict are now called motions for judgment as a matter of law. For the remainder of this opinion, I will refer to defendants' prior motion for a directed verdict as a motion for judgment as a matter of law.

Plaintiffs base their untimeliness argument on Rule 58. Under Rule 58, judgment must be entered on a separate document. Fed. R. Civ. P. 58(a). In 2002, Rule 58 was amended to address situations where courts fail to comply with the separate document requirement – that had resulted in confusion as to when the time for making post-judgment motions had to begin to run. Fed. R. Civ. P. 58(b)(2) advisory committee's notes. Under the amended rule, judgment is deemed to be entered either at the time judgment is in fact entered on a separate document *or* 150 days after entry of judgment on the docket. Fed. R. Civ. P. 58(b)(2). Plaintiffs argue that judgment was entered on January 13, 2005, when the jury's verdict was entered on the docket, and, because the Court did not enter judgment on a separate document until August 15, 2005, the time for filing Rule 50 and 59 motions began to run on June 13, 2005 – 150 days after the jury's verdict was entered. Defs. Br. at 4-6.

Plaintiffs' argument ignores the fact that, at the time jury returned its verdict, the amount of the judgment had not yet been determined due to a dispute between the parties as to whether plaintiffs were entitled to pre-judgment interest on Judge Greene's $5,510,010.78 damage award. Moreover, I expressly told the parties that judgment would not be entered until *after* the pre-judgment interest issue had been resolved. Transcript of Jury Deliberations Before the Honorable John M. Facciola United States Magistrate Judge, at 7-8 (Jan. 12, 2005). Shortly after the jury read its verdict, defendants had raised the issue of post-trial motions and, in response, I explained: "We don't want to get ahead of ourselves. First we have to get a judgment and then it is final." Id. at 7. And when defendants' counsel sought clarification, I stated: "The clerk will not enter judgment . . . until we know the amount in which the judgment is going to be entered and we don't know that until that question is resolved." Id. at 7-8. On

August 12, 2005, I issued an order denying pre-judgment interest and, on August 15, 2005, final judgment was entered. Because defendants' motion was filed on August 24, 2005, less then ten days thereafter, it was timely.

### B. Standard for Renewed Motion for Judgment as a Matter of Law

Entry of judgment as a matter of law pursuant to a motion made under Rule 50(b) is warranted only if "no reasonable juror could reach the verdict rendered in th[e] case." United States ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 735 (D.C. Cir. 1998) (quoting Anderson v. Group Hospitalization, Inc., 820 F.2d 465, 473 (D.C. Cir. 1987)). Like the standard for summary judgment, "[j]udgment as a matter of law is proper only if, 'considering the evidence in the light most favorable to [the non-moving party] and making all reasonable inferences in [its] favor,' there is no legally sufficient evidentiary basis for a reasonable jury to have found in [the moving party's] favor under controlling law." Pitt v. District of Columbia, 404 F. Supp. 2d 351, 353 (D.D.C. 2005) (quoting Hendry v. Pelland, 73 F.3d 397, 400 (D.C. Cir. 1996)). "In making that determination, a court may not assess the credibility of witnesses or weigh the evidence." Hayman v. Nat'l Acad. of Sciences, 23 F.3d 535, 537 (D.C. Cir. 1994). Entering judgment as a matter of law after the verdict is highly disfavored because it intrudes upon the rightful province of the jury. Boodoo v. Cary, 21 F.3d 1157, 1161 (D.C. Cir. 1994). Accordingly, "[e]ven if the Court finds the evidence that led to the jury verdict unpersuasive, or that it would have reached a different result if it were sitting as fact-finder, that is not a basis for overturning the jury's verdict and granting judgment as a matter of law." Pitt, 404 F. Supp. 2d at 354 (citing 9 Moore's Federal Practice § 50.60[1] at 50-87 (3d. ed. 2002)).

### C. Denial of Defendants' Motion for Judgment as a Matter of Law Was Not Erroneous

Defendants argue that I erroneously denied their motion for judgment as a matter of law. Specifically, they assert that the evidence presented at trial was less persuasive than the record evidence that had been before the court of appeals when it reversed summary judgment and, therefore, a reasonable jury could not have found that defendants consented to Iglesias' use of their vehicle. Defs. Br. at 22-25. In response, plaintiffs stress the high standard for granting renewed motions for judgment as a matter of law and argue that the court of appeals' decision reversing summary judgment requires that defendants' present motion be denied. Pls. Br. at 6-7.

In reversing my grant of summary judgment, the court of appeals found that defendants' evidence regarding the absence of consent was contradicted and, as a result, the case had to go to the jury. Athridge, 312 F.3d at 477-78. Under the District of Columbia Motor Vehicle Safety Responsibility Act, D.C. Code § 50-1301.08,[3] proof of ownership of a vehicle creates "a rebuttable presumption" that the owner consented to the driver's use of the vehicle. Id. This presumption is "powerful" and "can only be overcome by 'uncontradicted and conclusive evidence' of non-consent." Id. The court of appeals explained that, "an automobile owner is entitled to judgment as a matter of law if he or she asserts *without contradiction* that the vehicle was taken and used without consent." Id. (emphasis in original). However, "if the plaintiff proffers facts to discredit the defendant's evidence of non-consent, then the issue must be submitted to a jury." Id. (internal citations omitted). Although the Rivases and Iglesias both testified that there was no consent, the court of appeals found that the plaintiffs had presented

---

[3] All references to the D.C. Code are to the electronic version available on Westlaw and Lexis.

contrary evidence of non-consent and, therefore, the case had to go to the jury. Id. at 477-78.

In renewing their motion for judgment as a matter of law, defendants argue that the evidence of implied consent that was ultimately presented at trial was not as persuasive as the evidence that had been before the court of appeals. Defs. Br. at 25.  The court of appeals' opinion listed the following evidence of implied consent: (1) Iglesias' facility with a stick-shift vehicle; (2) testimony that Iglesias told his friend Bruce Thornberg that he had driven the vehicle in the past; (3) testimony that Iglesias had been seen driving a vehicle belonging to the Rivases' son in the past; (4) that the Rivases and Iglesias are relatives; (5) that the Rivases did not press charges against Iglesias for unauthorized use of their vehicle; (6) that the Rivases allowed Iglesias access to their home while they were in South America, while leaving the car keys available therein; and (7) Francisco Rivas' inability to read English when he signed his affidavit asserting non-consent. Athridge, 312 F.3d at 478.  In their renewed motion for judgment as a matter of law, defendants attack each of these pieces of evidence in turn.

Defendants argue that the evidence that Iglesias had previously driven the Rivases' vehicle was weakened at trial.  First, the evidence that Iglesias was able to drive a stick-shift car was based solely on the testimony of Bruce Thornberg, who had ridden in the car with Iglesias on the day of the accident. Defs. Br. at 22.  Although Thornberg testified that Iglesias had no difficulty driving the car, defendants stress that Thornberg did not observe Iglesias driving with a stick-shift until *after* Iglesias had driven from the Rivases' home to the Mazza Gallery and then from the Mazza Gallery to the point where the accident occurred. Id. at 22-23.  Defendants contend that Iglesias could have learned to drive with a stick-shift that very day before he saw Thornberg. Id. at 23.  In addition, Iglesias denied at trial that he had ever driven the Rivases' car

in the past and Thornberg did not testify that he had previously seen Iglesias drive the Rivases' son's car. Id.

Defendants also challenge the probative value of the familial relationship and the fact that the Rivases did not press charges. Id. at 23-24.  Specifically, defendants argue that a familial relationship is merely one of many factors that might raise doubts about veracity. Id. at 23.  Defendants argue that the probative value of the Rivases' decision to not press charges was weakened by the testimony of Officer Sharr. Id. at 24.  Officer Sharr testified that he had abandoned further inquiry into whether the Rivases intended to press charges because he knew that Iglesias was the Rivases' relative. Id. at 24.  In addition, defendants argue that the Rivases did not press charges because they did not think of Iglesais' use of their car as "stealing," that is, use without regard to bringing it back. Id. at 23-24.

Defendants argue that the fact that the Rivases left the car keys in the house and available while they were in South America "is of no consequence." Id. at 24.  But defendants do not explain why that was of no consequence.

Finally, defendants argue that the fact that Francisco Rivas consistently testified that he did not consent to Iglesias' use of the car contradicts the court of appeals' conclusion that his lack of proficiency reading English weakened the probative value of an affidavit in which he stated that he did not consent to Iglesias' use of his car. Id. at 24.

The standard applied by the court of appeals in reversing summary judgment is the same standard that I must now apply in considering defendants' renewed motion for judgment as a matter of law: whether, considering the evidence in the light most favorable to plaintiffs, there was a legally sufficient evidentiary basis for a reasonable jury to have found in plaintiffs'

favor. Despite defendants' challenges to the strength of plaintiffs' evidence on implied consent, there remained a factual dispute over whether there was implied consent and, therefore, the case had to be submitted to the jury. Any difference between the record evidence that was before the court of appeals and what was ultimately presented at trial is not so significant that it changed the landscape of the consent issue. The evidence now highlighted by defendants (some of which is argument, not evidence) was just part of the overall evidence to be considered and weighed by the jury. "[T]he court may not assess the credibility of witnesses or weigh the evidence." Hayman, 23 F.3d at 537. "Even if the Court finds the evidence that led to the jury verdict unpersuasive, or that it would have reached a different result if it were sitting as fact-finder, that is not a basis for overturning the jury's verdict and granting judgment as a matter of law." Pitt, 404 F. Supp. 2d at 354. As dictated by the court of appeals' reasoning, I cannot find that no reasonable jury could have found implied consent and, therefore, defendants' renewed motion for judgment as a matter of law must be denied.

      **D.**      **Standard for Motion for New Trial**

A motion for a new trial under Rule 50 of the Federal Rules of Civil Procedure should be granted "only where the court is convinced the jury verdict was a 'seriously erroneous result' and where denial of the motion will result in a 'clear miscarriage of justice.'" Nyman v. Fed. Deposit Ins. Corp., 967 F. Supp. 1562, 1569 (D.D.C. 1997) (quoting Sedgwick v. Giant Food, Inc., 110 F.R.D. 175, 176 (D.D.C. 1986)). "[T]he standard for granting a new trial is not whether minor evidentiary errors were made but rather whether there was a 'clear miscarriage of justice.'" Nyman, 967 F. Supp. at 1569 (citations omitted). When deciding whether to grant a motion for a new trial, "the court should be mindful of the jury's special function in our legal

system and hesitate to disturb its finding." Id.

### E.    The Jury Verdict Was Not Against the Weight of the Evidence

In considering a motion for a new trial based on the argument that the verdict was against the weight of the evidence, "the trial judge's disagreement with the jury on the credibility of witnesses does not justify the granting of a new trial." Langevine v. District of Columbia, 106 F.3d 1018, 1023 (D.C. Cir. 1997) (citing Hutchinson v. Stuckey, 952 F.2d 1418, 1421 (D.C. Cir. 1992)).  As previously discussed in the context of defendants' renewed motion for judgment as a matter of law, there was evidence contradicting the Rivases' and Iglesias' assertion of non-consent and, therefore, it was for the jury to weigh the evidence and to consider the credibility of the witnesses.  Accordingly, I will not grant defendants a new trial on the ground that the verdict was against the weight of the evidence.

### F.    The Jury Instruction on Consent Was Not Erroneous

Defendants argue that my instruction to the jury regarding "consent" was "incomplete, erroneous, and prejudicial to the defense." Defs. Br. at 28.  Defendants assert that the jury should have been instructed to determine whether there was consent at the "time of the accident" or on the "day of the accident." Defs. Br. at 30.  In response, plaintiffs argue that defendants were not prejudiced by the instruction because the element that defendants claim was missing from the instructions was actually encompassed by the language used and because all of the evidence and argument presented at trial focused the jury on the issue of whether Iglesias had defendants' consent on the day of the accident. Pls. Br. at 15-18.

"It is well-established that '[a] defendant is entitled to an instruction on a defense theory if it has a basis in the law and in the record.'" Rogers v. Ingersoll-Rand Co., 971 F. Supp. 4, 11

(D.D.C. 1997) (quoting <u>Hasbrouck v. Texaco, Inc.</u>, 842 F.2d 1034, 1044 (9th Cir. 1989)). However, "as long as a district judge's instructions are legally correct . . . he is not required to give [jury instructions] in any particular language." <u>Miller v. Poretsky</u>, 595 F.2d 780, 788 (D.C. Cir. 1978). <u>See</u> <u>also</u> <u>Joy v. Bell Helicopter Textron, Inc.</u>, 999 F.2d 549, 556 (D.C. Cir. 1993) ("jury instructions are not considered erroneous if, when viewed as a whole, 'they fairly present the applicable legal principles and standards'"); <u>Columbia Plaza v. Sec. Nat'l Bank</u>, 676 F.2d 780, 787 n.4 (D.C. Cir. 1982) ("as long as the instructions provided by the trial judge state the applicable law correctly, the form of the language used can be left to the trial court's discretion"). Indeed, "[n]o party to litigation is entitled to have instruction presented to the jury in a manner most likely to result in a verdict in that party's favor." <u>Camenisch v. Martens</u>, No. 93-0322, 1995 WL 461928, at *1 (D.D.C. July 7, 1995). "Rather, the trial judge's responsibility is to present fair and balanced instructions which explain the relevant legal principals to the jury." <u>Id.</u>

    I issued the following jury instruction on consent:

> In this case, plaintiffs contend that the defendants consented to Jorge Iglesias' use of their car. Plaintiffs make no claim that the defendants gave their express consent to Jorge to drive their car.
>
> Instead, plaintiffs claim that the defendants gave their implied consent for Jorge to drive their Jetta. Implied consent may be inferred from one's conduct rather than one's direct expression. The conduct may occur before or after the accident. In determining whether there was implied consent, *you should consider all the facts of the case bearing on the use of the car and the relationship of the owner and the driver*.
>
> You many find that the owners gave implied consent to the driver if *under the circumstances* a reasonable person would conclude that they gave their consent. Such implied consent may be

12

> inferred from acts or words indicating to a reasonable person that
> that person had consent to use the vehicle.

Transcript of Jury Trial - Day 2 Before the Honorable John M. Facciola United States Magistrate Judge, at 146 (Jan. 11, 2005) (emphasis added). At trial, defendants objected to this consent instruction, asserting that the instruction should have directed the jury to determine whether Iglesias had consent to use the vehicle on the actual day of the accident, when the Rivases were in South America. Defendants' counsel argued:

> In prior discussion of this case, and I believe in a prior order, the Court indicated that the consent issue dealt with whether the defendants had given consent to Jorge to drive the car that struck the minor plaintiff *on this particular day*, and under these circumstances. And I don't think the instruction addresses it in that manner. It simply asks - - it simply addresses consent in a general term.

Id. at 82 (emphasis added). But, under the District of Columbia Motor Vehicle Safety Responsibility Act, consent can be either express or implied, see D.C. Code § 50-1301.08, and there are any number of facts from which implied consent can be inferred. Accordingly, the instruction that the jurors "consider all the facts of the case bearing on the use of the car and the relationship of the owner and the driver" in determining whether there was implied consent was an accurate reflection of the law. Although the driver must have had consent to use the car *at the time* of the accident, such consent does not necessarily have to have been given *on the day* of the accident. Defendants are not entitled to a consent instruction that, in essence, instructs the jury to find that, because the Rivases were in South America *on the day* of the accident, they could not have given their consent for Iglesias to use the car *at the time* of the accident. It is the court's responsibility to accurately and fairly state the law. Accordingly, I find that defendants

13

have not shown that the jury instructions on consent were erroneous, incomplete, or resulted in such a clear miscarriage of justice so as to warrant a new trial.

### G.    Admission of Exhibit 11

Exhibit 11 consisted of the findings of fact from Judge Greene's 1996 opinion with the redaction of the following phrase: "not only did the defendant (Iglesias) take the car without the permission of the owner, but he did not have, and had never had, either a driver's license or a learner's permit." Pls. Br. at 18. Defendants argue that the admission of Judge Greene's findings of fact caused the case to be framed as a past injustice and created irrelevant sympathies for the plaintiffs. Defs. Br. at 32. Specifically, they argue that the injuries and damages aspect of the case, that are reflected in Judge Greene's findings, have no bearing upon the issues before the jury and that allowing Judge Greene's findings into evidence permitted plaintiffs to argue that an injustice had occurred and that the $5.5 million verdict was still unsatisfied. Defs. Br. at 32. Defendants argue that the prejudice was compounded by the fact that the only relevant part of the exhibit was the redacted sentence in which Judge Greene stated that Iglesias did not have the Rivases' permission to take the car. Defs. Br. at 32.

A little history of the dispute surrounding Exhibit 11 is necessary. Initially, plaintiffs moved me to take judicial notice of certain excerpts of Judge Greene's findings. Plaintiffs' request for judicial notice was denied, but I decided to allow the findings into evidence under the residual exception to the hearsay rule, Rule 807. Rule 807 allows the court to admit hearsay for which there are circumstantial guarantees of trustworthiness where the hearsay is evidence of a material fact, it is more probative than other available evidence, and the interests of justice are best served by its admission. See Fed. R. Evid. 807. I determined that allowing Judge Greene's

findings into evidence, but not giving them preclusive effect, was the fairest way to balance both plaintiffs' and defendants' interests. Athridge v. Rivas, No. 89-1222, Memorandum Opinion at 11-12 (Dec. 21, 2004).  Specifically, I found that Judge Greene's findings were particularly trustworthy and that their probative value outweighed any tendency to prejudice the Rivases. Id. at 12.  And, finding that the interests of justice were best served by admitting Judge Greene's findings, I explained:

> [T]he Rivases conceded that they were bound by Judge Greene's decision . . . and they have proffered no reason to relieve them of that concession.  In a lawsuit that bears a 1989 docket number and is based on an accident that occurred in 1987, preventing the Athridges from introducing evidence of a court decision that summarizes the very evidence the Rivases would have faced had they not been improvidently dismissed – when the Rivases have conceded that they should be bound by that prior judgment if they are found to have consented – is surely an abuse of my discretion. Simply put, I am hard pressed to understand why a party that made such a concession would be unfairly prejudiced by the admission of Plaintiffs' Exhibit 11 into evidence, especially because, at this point, it will not be given any preclusive effect.

Id. at 13.  Unlike Judge Greene's other findings, however, I decided to redact the finding regarding the Rivases' permission because it was less probative and more prejudicial than his other findings.  Specifically, because that finding went to the ultimate issue in the present case, it may have been unfairly prejudicial to defendants.  Moreover, because consent was not an issue before Judge Greene, that finding constiutes dicta.

In defendants' present motion for a new trial, they raise no new arguments as to why Exhibit 11 should not have been admitted.  Accordingly, for the reasons stated in my previous opinion just discussed, I find that defendants have failed to show how my decision to allow Exhibit 11 into evidence resulted in a clear miscarriage of justice so as to warrant such an

extreme remedy as a new trial.

### H.  Admission of Exhibit 14 Was Not Erroneous

Exhibit 14 consisted of the complaint filed by Aetna in the earlier Superior Court case against Iglesias and Iglesias' answer to that complaint. In relevant part, in his answer, Iglesias denied Aetna's allegation that he was operating the Rivases' vehicle without a reasonable belief that he was entitled to do so. Defs. Br. at 34. At trial, defendants objected to the admission of Exhibit 14 on the ground that the denial was "not [Iglesias'] answer." <u>Transcript of Jury Trial - Day 1 Before the Honorable John M. Facciola United States Magistrate Judge</u>, at 163-64 (Jan. 10, 2005). I overruled defendants' objection explaining: "No, it is. It's counsel for the defendant. [Iglesias] was the defendant. It's an adopted admission. It was submitted by his attorney as the answer to a complaint." <u>Id.</u> at 164.

In their present motion for a new trial, defendants argue that the admission of Exhibit 14 was erroneous for the following reasons: (1) Iglesias' denial was a statement of his attorney, Irving Starr, not a statement of Iglesias; (2) the denial was not probative because it has been shown to be inaccurate by (a) Iglesias' testimony that he never told Attorney Starr that he believed that he had permission to operate the Rivases' vehicle and (b) Attorney Starr's deposition testimony that Iglesias had always told him that he took the car on impulse and never had any reason to believe that he had permission to do so; (3) defendants were unfairly prejudiced because, without Exhibit 14, the only contradiction to Iglesias' assertion of non-consent was Thornberg's testimony regarding statements made by Iglesias on the day of the accident; and (4) the denial was hearsay and none of the exceptions provided in Rules 801, 803, or 804 of the Federal Rules of Evidence rendered it admissible. Defs. Br. at 33-36. In response,

16

plaintiffs argue that Iglesias' statement was admissible (1) as a statement made by his attorney concerning a matter within his employment and (2) as a prior inconsistent statement. Pls. Br. at 21-22.

First, although Attorney Starr may have drafted and signed Iglesias' answer, the statements contained therein are considered statements of Iglesias himself. See, e.g., Dugan v. EMS Helicopters, Inc., 915 F.2d 1428, 1431-32 (10th Cir. 1990) ("inconsistent allegations contained in prior pleadings are admissible in subsequent litigation" and prior pleadings may be introduced on cross-examination for use as an impeachment tool under Rule 613 of the Federal Rules of Evidence); Williams v. Union Carbide Corp., 790 F.2d 552, 555-56 (6th Cir. 1986) (statements made by an attorney concerning a matter within the scope of his employment may be admissible against the client and pleadings in a prior case may be used as evidentiary admissions).

Second, the determination of Exhibit 14's probative value was for the jury.  Defendants had the opportunity to question Iglesias about his answer and about whether he ever told his attorney that he had a reasonable belief that he had the Rivases' consent to use their vehicle. Moreover, defendants could have had Attorney Starr testify at trial regarding whether Iglesias had always told him that he took the car on impulse and never had any reason to believe that he had permission to do so.

Finally, because defendants did not raise at trial the argument that Iglesias' answer did not fall within any of the hearsay exceptions in Rules 801, 803, or 804, that argument has been waived and it cannot be raised in a post-trial motion.  At trial, defendants merely objected to Exhibit 14 on the ground that it was not Iglesias' statement – they did not raise a hearsay

objection. Moreover, in their current motion, defendants provide absolutely no explanation as to why Rules 801, 803, and 804 would not render the denial admissible. I cannot be expected to guess the basis of defendants' argument. In order to succeed on a motion for a new trial, defendants must show that the admission of Exhibit 14 resulted in a clear miscarriage of justice. Defendants have not meet this burden and, therefore, I will not grant this motion for a new trial on this ground.

## III.  CONCLUSION

For the foregoing reasons, defendants' renewed motion for judgment as a matter of law and motion for a new trial will be denied.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: